

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed December 29, 2025**

_____

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 20-43264-ELM |
| STEVEN BOYD MITCHELL and | § | |
| JANA DIANE MITCHELL, | § | Chapter 7 |
| | § | |
| Debtors. | § | |
| | § | |
| ALBERT M. ABBOOD, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 21-04053 |
| | § | |
| STEVEN BOYD MITCHELL and | § | |
| JANA DIANE MITCHELL, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION</u>

In this adversary proceeding, Plaintiff Albert M. Abbood ("**Plaintiff**") has filed suit against

Defendants Steven Boyd Mitchell ("**Mr. Mitchell**") and Jana Diane Mitchell ("**Mrs. Mitchell**"

and together with Mr. Mitchell, the "**Defendants**"), the chapter 7 debtors in Case No. 20-43264

(the "**Bankruptcy Case**"), to request the revocation of their previously-granted chapter 7

discharge in the Bankruptcy Case. Pursuant to his Complaint,[1] the Plaintiff seeks such relief under both section 727(d)(1) of the Bankruptcy Code,[2] alleging that the Defendants obtained their bankruptcy discharge in the face of the fraudulent nondisclosure of Mr. Mitchell's ownership interest in a business operated as Savor Culinary Services and the limited liability company Savor Culinary Services 2020, LLC ("**Savor 2020 LLC**"),[3] and section 727(d)(2) of the Bankruptcy Code,[4] alleging that Mr. Mitchell acquired such ownership interest constituting property of the estate, or became entitled to acquire such ownership interest that would constitute property of the estate, and that the Defendants knowingly and fraudulently failed to report and surrender the interest to the chapter 7 trustee for administration in connection with the Bankruptcy Case.

The Defendants filed their Answer[5] in opposition to the Complaint, disputing all aspects of the relief requested by the Plaintiff.

On May 25, 2023, the Court conducted a trial of the matter. At the conclusion of the trial, the Court took the matter under advisement. Having now considered the Complaint, the Answer, the parties' Joint Stipulations,[6] the evidence presented, and the representations and arguments of counsel, the Court issues its findings of fact and conclusions of law pursuant to Federal Rule of

---

[1] *See* Docket No. 26 (*Second Amended Complaint to Revoke Discharge Pursuant to Section 727(d) of the United States Bankruptcy Code* – for simplicity, referred to herein as just the "**Complaint**").

[2] *See* 11 U.S.C. § 727(d)(1).

[3] Plaintiff additionally alleges that the Defendants obtained their bankruptcy discharge in the face of the fraudulent nondisclosure of income received by Mr. Mitchell from Savor 2020 LLC. At the conclusion of the Plaintiff's case in chief, however, the Court granted the Defendants' oral motion for a directed verdict to the extent the § 727(d)(1) claim was predicated upon fraudulently concealed income. Therefore, that aspect of the Plaintiff's Complaint is not discussed further herein.

[4] *See* 11 U.S.C. § 727(d)(2).

[5] *See* Docket No. 42 (*Response to Albert Abbood's Second Amended Complaint to Revoke Discharge Pursuant to Section 727(d) of the United States Bankruptcy Code* – for simplicity, referred to herein as just the "**Answer**").

[6] *See* Docket No. 80 (the parties' proposed *Joint Pretrial Order* (the "**PTO**")), § B, at pp.2-5 (collectively, the "**Joint Stipulations**"); *see also* Docket No. 88 (Court's order approving and adopting the parties' PTO). The Court notes that the parties did not separately number each of the individual paragraphs within the Joint Stipulations of the PTO. For ease of reference, the Court will refer to each particular Joint Stipulation cited herein by the paragraph number that would have corresponded to such paragraph had the paragraphs been numbered.

Civil Procedure 52, made applicable to this proceeding pursuant to Federal Rule of Bankruptcy

Procedure 7052.[7]

## JURISDICTION

The Court has jurisdiction of this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and

157 and *Miscellaneous Order No. 33: Order of Reference of Bankruptcy Cases and Proceedings*

*Nunc Pro Tunc* (N.D. Tex. Aug. 3, 1984).  Venue of the proceeding in the Northern District of

Texas is proper pursuant to 28 U.S.C. § 1409.  The proceeding constitutes a core proceeding within

the meaning of 28 U.S.C. § 157(b)(2)(J).

## FACTUAL BACKGROUND

### A.    The Parties

The Defendants are residents of the Fort Worth, Texas area.  Mr. Mitchell is a chef by

trade.[8]  According to the Defendants' initial disclosures in the Bankruptcy Case, however, he only

earned $312 in income as a chef during the entirety of 2019 and he received no income as a chef

in 2020 through the date of the bankruptcy filing on October 22, 2020 (the "**Petition Date**").[9]  In

Mrs. Mitchell's case, the Defendants disclosed that, as of the Petition Date, she was employed as

a Registered Nurse at Texas Health Fort Worth.  In the three years preceding the Petition Date, she

also received certain retirement income.[10]

---

[7] To the extent any of the following findings of fact are more appropriate categorized as conclusions of law or include any conclusions of law, they should be deemed as such, and to the extent that any of the following conclusions of law are more appropriately categorized as findings of fact or include any findings of fact, they should be deemed as such.

[8] *See* Joint Stipulations ¶ 2.

[9] *See* Plaintiff Exh. M, at p.53 (Schedule I – disclosing Mr. Mitchell's employment status as unemployed as of the Petition Date) and p.64 (Statement of Financial Affairs, responses to Questions 4 and 5 – disclosing Mr. Mitchell's income from all sources between 2018 and the Petition Date).

[10] *See id.*, at p.53 (Schedule I – reflecting Mrs. Mitchell's employment status as of the Petition Date) and p.64 (Statement of Financial Affairs, responses to Questions 4 and 5 – disclosing Mrs. Mitchell's income from all sources between 2018 and the Petition Date).

The Plaintiff is also a resident of the Fort Worth, Texas area. It is not clear from the record what the Plaintiff does for a living or the nature of the prepetition business dealings that he had with the Defendants. On May 10, 2019 (prior to the Petition Date), however, the Plaintiff filed a breach of contract action against the Defendants in the 67th Judicial District Court of Tarrant County, Texas, under Cause No. 067-307938-19 (the "**State Court Case**").[11] On May 28, 2019, the State Court Case was transferred to the 352nd Judicial District Court of Tarrant County, Texas.[12] On September 19, 2019, the Plaintiff obtained a judgment in the amount of approximately $25,000 against the Defendants (the "**Judgment**").[13] Based upon the Judgment, the Court entered an order on August 23, 2021, in the Bankruptcy Case pursuant to which the Plaintiff was allowed a nonpriority, unsecured claim in the Bankruptcy Case in the amount of $25,000 (the "**Judgment Debt**").[14]

**B.    *The Genesis of the Savor Culinary Services Business Concept***

Like Mr. Mitchell, Debra Cantrell-Oxman f/k/a Debra Cantrell ("**Cantrell**") is a chef by trade. According to Mr. Mitchell, in or about 2001, Cantrell originated the Savor Culinary Services business concept (the "**Savor Business**"). He described the Savor Business as a food and meal preparation service program designed to cater to the particular needs of those with cancer, diabetes, heart issues, and the like, and to those simply trying to lose weight. The food is prepared at a kitchen-outfitted location and then delivered to customers.

---

[11] *See* Plaintiff Exh. B, at p.4 (Amended Statement of Financial Affairs, response to Question 9); *see also* State Court Case docket while pending before the 67th Judicial District Court (the "**67th District Court Docket**"), of which the Court takes judicial notice.

[12] *See* 67th District Court Docket; *see also* State Court Case docket while pending before the 352nd Judicial District Court (the "**352nd District Court Docket**"), of which the Court takes judicial notice.

[13] *See* Plaintiff Exh. M, at p.27 (Schedule E/F – listing judgment debt of $22,400 owed by the Defendants to the Plaintiff); *see also* 352nd District Court Docket.

[14] *See* Bankruptcy Case Claim Register (Claim No. 23); Bankruptcy Case Docket No. 41 (allowing Claim No. 23 in the amount of $25,000).

In 2008, Cantrell organized Savor Culinary Services LLC ("**Savor LLC**") as a limited liability company through which the Savor Business would be operated.[15]   At some point thereafter, however, Cantrell sold the Savor Business/Savor LLC to Kevin Fuller ("**Fuller**").   It was during the time frame of Fuller's ownership that Mr. Mitchell, from time to time, provided contract chef assistance to Savor LLC.  As a result, Mr. Mitchell became familiar with the Savor Business and Cantrell and her skills and vision.

C.      *Cantrell Reacquires the Savor Business and Agrees to Partner with Mr. Mitchell*

At some point prior to July 21, 2020, Cantrell reacquired the Savor Business from Fuller. While the Defendants assert that Mr. Mitchell received little to no income from his service as a chef in 2020, Mr. Mitchell testified that he provided periodic cooking assistance to the Savor Business throughout 2020, ostensibly in an effort to position himself for a more significant role in the Savor Business.  His involvement in 2020 also coincided with the onset of the COVID-19 pandemic.  As explained by Mr. Mitchell, once the COVID-19 pandemic hit in early 2020,[16] he was doing whatever he could to position himself for chef work.

Ultimately, Cantrell and Mr. Mitchell discussed the possibility of combining forces to move the Savor Business forward as partners.  Under the new arrangement, Mr. Mitchell would be granted an ownership interest in the Savor Business and a corresponding membership interest in the new limited liability company to be organized for the purpose of operating the business.

Consistent with such understanding, on July 24, 2020, Cantrell and Mr. Mitchell executed an application for an "Assumed Name Certificate For an Unincorporated Business or Profession" which was filed with the County Clerk of Tarrant County, Texas (the "**Assumed Name**

---

[15] *See* Complaint ¶ 13; Answer ¶ 13.

[16] *See generally* Elvia Limon, "Here's how the COVID-19 pandemic has unfolded in Texas since March" (The Texas Tribune Jul. 31, 2020) found at https://www.texastribune.org/2020/07/31/coronavirus-timeline-texas/.

Certificate").[17]  Pursuant to the Assumed Name Certificate, which Cantrell and Mr. Mitchell both signed under oath before a notary, Cantrell and Mr. Mitchell affirmed their joint ownership of the "Savor Culinary Services" business, which was to be conducted as a limited partnership for the next 10 years.[18]  The County Clerk of Tarrant County, Texas issued a Certificate of Assumed Name on the same date to certify the filing of the Assumed Name Certificate.[19]  Mr. Mitchell's partnership interest in the "Savor Culinary Services" business is referred to herein as the "**Savor Partnership Interest**."

Separately, Cantrell commenced the process of readying things for the transition of the Savor Business into a newly organized limited liability company.  In particular, on July 21, 2020, Cantrell caused a Certificate of Formation to be filed with the Texas Secretary of State to organize Savor 2020 LLC.[20]  Pursuant to the Certificate of Formation, Cantrell and Mr. Mitchell were both listed as members and managing members of Savor 2020 LLC.[21]  Mr. Mitchell's membership interest in Savor 2020 LLC is referred to herein as the "**Savor Membership Interest**."  Mr. Mitchell's ownership interest in the Savor Business – whether by virtue of the Savor Partnership Interest or by virtue of the Savor Membership Interests – is hereby referred to as the "**Savor Ownership Interest**."

---

[17] *See* Plaintiff Exh. E, at p.5 (Assumed Name Certificate).

[18] *See id.*

[19] *See id.*, at p.6.

[20] *See id.*, at pp.3-4; *see also* Joint Stipulations ¶¶ 1 and 3.

[21] *See* Plaintiff Exh. B, at p.9 (Statement of Financial Affairs, response to Question 27); Plaintiff Exh. K, at p.2 (acknowledging Mr. Mitchell's listing as a member of Savor 2020 LLC).

**D.**     ***Plaintiff Discovers Mr. Mitchell's Savor Ownership Interest and Provides Notice to Cantrell of His Intent to Collect Against Such Interest***

In and around the same time frame – late July 2020 – the Savor Business Facebook page was updated to state that "Savor is owned by both Chef Deb Cantrell and Chef Steve Mitchell."[22] At the time, Cantrell was unaware of the Judgment that the Plaintiff had obtained against Mr. Mitchell.  By letter dated August 20, 2020, from Plaintiff's counsel to Cantrell (the "**Judgment Notice Letter**"), however, Cantrell was put on notice of the Judgment and of Plaintiff's position that "Mr. Mitchell's ownership/partnership interest in your business [Savor Culinary Services] is a property interest against which we believe we can levy a Writ of Execution" and that, in the absence of satisfaction of the Judgment or an arrangement to satisfy the Judgment by September 9, 2020, "it is our intention to move forward and secure a Writ of Execution."[23]

No action was taken by the September 9, 2020, deadline to either satisfy the Judgment or make arrangements for the satisfaction of the Judgment.  Instead, by letter dated September 9, 2020, addressed to Plaintiff's counsel (the "**Judgment Notice Letter Response**"), Cantrell, by and through her attorney Wallace "Buz" Barlow ("**Barlow**"), attempted to change the narrative, claiming that Cantrel merely "*intended* to share an equity stake in the new venture with Steven Mitchell" but that because the Judgment Notice Letter was received prior to the initial meeting of the members of Savor 2020 LLC and prior to Mr. Mitchell's making of any monetary investment in the "venture," Cantrell had actually "declined to go forward as intended and terminated her agreement and understanding with Mr. Mitchell" resulting in "Mr. Mitchell ha[ving] no ownership interest of any kind."[24]

---

[22] *See* Complaint ¶ 12; Answer ¶ 12.

[23] *See* Plaintiff Exh. K, at p.1 (Judgment Notice Letter); *see also* Joint Stipulations ¶ 4.

[24] *See* Plaintiff Exh. K, at pp.2-3 (Judgment Notice Letter Response) (emphasis added); *see also* Joint Stipulations ¶ 5.

As would later be confirmed by the Defendants, however, this was not entirely true. Instead, the Defendants confirmed that Mr. Mitchell had, in fact, obtained the Savor Ownership Interest, but that he was removed as an owner on September 30, 2020.[25]  To evidence the change in relation to Savor 2020 LLC, on September 28, 2020, Cantrell caused a Certificate of Amendment to be filed with the Texas Secretary of State (the "**Certificate of Formation Amendment**") to amend the originally-filed Certificate of Formation to exclude all references to Mr. Mitchell and limit the number of members and managing members to one – being Cantrell.[26]

According to Mr. Mitchell, Cantrell took such action unilaterally and without his knowledge, input, or involvement.  He further testified that Cantrell declined to move forward with the joint ownership in any event because matters had not been fully lined up in relation to the Savor Business as of the time of her receipt of the Judgment Notice Letter.  In particular, some uncertainty purportedly existed with respect to whether Cantrell would be able to hang on to the leased space where the Savor Business was being operated.  According to Mr. Mitchell, Cantrell had only secured a sublease to the space and the sublease was at risk due to the sublessor's default under the primary lease.

While the leasehold situation did present a level of logistical uncertainty, the Court did not find Mr. Mitchell's explanations to be credible.  Instead, it was clear to the Court that, in an effort to protect the Savor Business and Cantrell's interest in the same, Mr. Mitchell simply (a) agreed to relinquish his Savor Ownership Interest, (b) agreed to the narrative laid out in the Judgment Notice Letter Response, and (c) consented to the filing of the Certificate of Formation Amendment, all with the understanding that he and Cantrell would revisit the possibility of Mr. Mitchell being a

---

[25] *See, e.g.*, Plaintiff Exh. B, at p.9 (Amended Statement of Financial Affairs, response to Question 27).

[26] *See* Joint Stipulations ¶ 6.

joint owner after the Defendants had eliminated their Judgment Debt problem.   Indeed, notwithstanding the termination of his co-ownership, Mr. Mitchell continued to remain involved in the day-to-day Savor Business operations.   But to ensure that there was no appearance of a continuing ownership interest in the business, Mr. Mitchell was not paid for his work – at least not initially.

### E.    The Defendants Pursue Discharge of the Judgment Debt Through Bankruptcy

Ultimately, the strategy elected by the Debtors to deal with the Judgment Debt was to file for bankruptcy protection.   Thus, on October 22, 2020 (the Petition Date), the Defendants filed their joint voluntary petition for relief under chapter 7 of the Bankruptcy Code, thereby initiating the Bankruptcy Case.[27]  Shawn K. Brown (the "**Trustee**") was appointed to serve as the chapter 7 trustee of the Defendants' bankruptcy estate.[28]

On the same date as the filing, the Court issued a *Notice of Chapter 7 Bankruptcy Case* pursuant to which the Court, among other things, identified **February 14, 2021**, as the deadline for the filing of an action to object to the Defendants' chapter 7 bankruptcy discharge or to the dischargeability of individual debts owed by the Defendants (the "**Discharge Objection Deadline**").[29]  The Plaintiff was served with a copy of the *Notice of Chapter 7 Bankruptcy Case* on October 29, 2020.[30]

---

[27] *See* Plaintiff Exh. M, at pp.1-8 (voluntary petition); *see also* Joint Stipulations ¶ 7.

[28] *See* Bankruptcy Case Docket No. 7 (Notice of Chapter 7 Bankruptcy Case), at p.1 (¶ 6 – bankruptcy trustee information).

[29] *See* Bankruptcy Case Docket No. 7 (Notice of Chapter 7 Bankruptcy Case), at p.2 (¶ 9 – deadlines section); *see also* Joint Stipulations ¶ 10.

[30] *See* Bankruptcy Case Docket No. 9 (Certificate of Notice filed by Bankruptcy Noticing Center).

*F.*    ***The Defendants' Initial Sworn Disclosures in the Bankruptcy Case***

    *1.*    ***The Defendants' Schedules***

Among the filings required of a debtor are schedules of, among other things, assets, liabilities, and income ("**Schedules**").[31]  In the Defendants' case, at the same time as filing their joint voluntary bankruptcy petition, they filed their Schedules (the "**Defendants' Schedules**").[32] Along with the Defendants' Schedules, the Defendants executed a *Declaration About an Individual Debtor's Schedules*, pursuant to which the Defendants affirmed the following: "Under penalty of perjury, I declare that I have read the summary and schedules filed with this declaration and that they are true and correct."[33]

    ***(a) Business Ownership (Schedule A/B Questions 19 and 37)***

Schedule A/B of the Schedules is designed to obtain a debtor's disclosure of all owned assets, both tangible and intangible.  With respect to the ownership of businesses, interests in businesses, and business-related property, Question 19 of Schedule A/B requires a debtor to disclose the debtor's ownership in all non-publicly traded stock and interests in incorporated and unincorporated businesses, including interests in LLCs, partnerships, and joint ventures.[34] Question 37 requires a debtor to disclose if the debtor owns or has any legal or equitable interest in any business-related property.[35]

In response to Question 19, consistent with the prepetition relinquishment of the Savor Ownership Interest, the Judgment Notice Letter Response, and the Certificate of Formation

---

[31] *See* 11 U.S.C. § 521(a)(1)(B)(i)-(ii).

[32] *See* Plaintiff Exh. M, at pp.9-62 (Defendants' Schedules).

[33] *See id.*, at p.62.

[34] *See id.*, at p.12 (Schedule A/B Question 19).

[35] *See id.*, at p.14 (Schedule A/B Question 37).

Amendment, the Defendants omitted any reference to the Savor Ownership Interest.[36]  Similarly, in response to Question 37, the Defendants affirmed that they did not own any legal or equitable interest in any business-related property.[37]

### (b) Income Disclosures (Schedule I)

A debtor is required in Schedule I of the Schedules to disclose the debtor's current employment and monthly income as of the date of the filing of the schedule.  The introductory language of Schedule I explains that "[i]f two married people are filing together …, both are equally responsible for supplying correct information."[38]

Pursuant to Schedule I of the Defendants' Schedules, the Defendants disclosed that, as of October 22, 2020, Mr. Mitchell was unemployed and that his only source of income at the time was unemployment compensation.[39]  Thus, such response was again consistent with Mr. Mitchell's separation (albeit temporary) from the Savor Business.[40]

### 2.    The Defendants' Original SOFA

Another filing required of a debtor is a Statement of Financial Affairs (the "**SOFA**").[41]  The SOFA is designed to, among other things, obtain a debtor's disclosure of prepetition income, any voluntary or involuntary prepetition transfers of assets, and the debtor's ownership and control of businesses.  In the Defendants' case, at the same time as filing their joint voluntary bankruptcy

---

[36] *See id.*, at p.12 (response to Schedule A/B Question 19).

[37] *See id.*, at p.14 (response to Schedule A/B Question 37).

[38] *See id.*, at pp.53-56 (Schedule I, introductory instructions).

[39] *See id.*, at pp.53-54 (responses to Schedule I Questions 1 and 2-12).

[40] Once the initial disclosures were out of the way in the Bankruptcy Case, Cantrell and Mr. Mitchell apparently determined that Savor 2020 LLC could safely pay Mr. Mitchell as an independent contractor.  Thus, on November 30, 2020, for example, Savor 2020 LLC made an initial payment of $2,500 to Mr. Mitchell, which was logged within Savor 2020 LLC's accounting records as "Contracted Labor."  *See* Plaintiff Exh. H, at p.1.  According to Mr. Mitchell, the payment was tied to the high level of services that he provided to Savor 2020 LLC in and around the Thanksgiving time frame, after the Bankruptcy Case had been commenced.

[41] *See* 11 U.S.C. § 521(a)(1)(B)(iii).

petition, they filed their SOFA (the "**Defendants' Original SOFA**").[42]  In signing the Defendants'

Original SOFA, each of the Defendants verified that "I have read the answers on this *Statement of*

*Financial Affairs* and any attachments, and I declare under penalty of perjury that answers are true

and correct."[43]

### *(a) Prepetition Income (SOFA Questions 4 and 5)*

Question 4 of the SOFA requires a debtor's disclosure of income from employment and

from operating a business during the year of the bankruptcy filing and during the two previous

calendar years.  It instructs a debtor to fill in the total amount of income received from all jobs and

all businesses, including part-time activities.[44]   Question 5 of the SOFA requires a debtor's

disclosure of any other income during the same time frame.  It instructs a debtor to include income

regardless of whether the income is taxable.[45]

In response to Questions 4 and 5, the Defendants disclosed that Mr. Mitchell had received

no wages, commissions, bonuses, tips, or other business income in 2020 (prior to the Petition Date)

associated with the Savor Business.[46]

### *(b) Prepetition Transfers of Property Outside of the Ordinary Course of Business (SOFA Question 18)*

Question 18 of the SOFA requires a debtor's disclosure of any transfers of property to

anyone, other than property transferred in the ordinary course of the debtor's business or financial

affairs, within 2 years of the bankruptcy filing.[47]

---

[42] *See* Plaintiff Exh. M, at pp.63-71 (Defendants' Original SOFA).  In the Defendants' Original SOFA, Mr. Mitchell is identified as "Debtor 1" and Mrs. Mitchell is identified as "Debtor 2."

[43] *See id*., at p.71.

[44] *See id*., at p.64 (SOFA Question 4).

[45] *See id*. (SOFA Question 5).

[46] *See id*. (responses to SOFA Questions 4 and 5).

[47] *See id*., at p.69 (SOFA Question 18).

In response to Question 18, the Defendants affirmed that there were no such transfers.[48]  In doing so, they failed to disclose Mr. Mitchell's relinquishment of the Savor Ownership Interest. The omission was intentional.  The Defendants were obviously fully aware of the prepetition action commenced by the Plaintiff to pursue collection against Mr. Mitchell's Savor Ownership Interest. Thus, to protect the Savor Business and the opportunity for Mr. Mitchell to pursue again later a joint ownership interest in the Savor Business, the Defendants completed their bankruptcy paperwork with the objective of evidencing no continuing relationship between Mr. Mitchell and the Savor Business.  That way, the Savor Business would remain free and clear of the bankruptcy process.

### *(c) Business Ownership and Connections (SOFA Question 27)*

Question 27 of the SOFA requires a debtor's disclosure of any businesses owned by the debtor within 4 years of the bankruptcy filing, and any businesses as to which the debtor had one or more of the following (among other) connections within such time frame: (i) member of a limited liability company or limited liability partnership; (ii) partner in a partnership; (iii) officer, director, or managing executive of a corporation; or (iv) owner of at least 5% of the voting or equity securities of a corporation.[49]

In response to Question 27, the Defendants failed to disclose Mr. Mitchell's prior Savor Ownership Interest and Mr. Mitchell's prior role as one of the managing members of Savor 2020 LLC.[50]  Here again, to protect the Savor Business and preserve the opportunity for Mr. Mitchell to pursue acquisition of an interest in the Savor Business later, the Defendants omitted all references to the Savor Ownership Interest, Savor 2020 LLC, and the Savor Business.

---

[48] *See id.* (response to SOFA Question 18).

[49] *See id.*, at p.70 (SOFA Question 27).

[50] *See id.* (response to SOFA Question 27).

**G.**     ***Mr. Mitchell is Questioned About His Savor Business Connections During the Defendants' § 341 Meeting of Creditors***

On December 16, 2020, roughly two months after the filing of the Defendants' Schedules and Defendants' Original SOFA, the Trustee conducted a meeting of creditors as statutorily mandated by section 341 of the Bankruptcy Code (the "**341 Meeting**").[51]   Both Defendants appeared at the 341 Meeting to provide sworn testimony.   The Plaintiff also attended the 341 Meeting *pro se*.

Having previously received the Judgment Notice Letter Response, reviewed the Defendants' initial disclosures in the Bankruptcy Case, and being skeptical of the Defendants' non-disclosure of any existing or prior connection between Mr. Mitchell and the Savor Business, the Plaintiff questioned Mr. Mitchell about the Savor Business and his income in relation thereto.[52] Among other things, the Plaintiff asked Mr. Mitchell if Cantrell's representation that Mr. Mitchell had failed to come up with the funding for his interest in the Savor Business was true.   Mr. Mitchell confirmed that it was true.[53]   Upon further probing by the Plaintiff, however, Mr. Mitchell conceded the following: "I'm no longer a partner and I'm no longer an employee of that business because of your e-mail to [Cantrell] and that[ ] [referring to Mr. Mitchell's prior Savor Ownership Interest] [has] been canceled."[54]

Thus, by virtue of the Plaintiff's questioning at the 341 Meeting, the Plaintiff successfully brought to light the fact that Mr. Mitchell had, in fact, been a part owner of the Savor Business and that his Savor Ownership Interest had been "canceled" as a result of the Judgment Notice Letter.

---

[51] *See* Joint Stipulations ¶ 9.

[52] *See id*.

[53] *See* Plaintiff Exh. A, at p.20 (transcript of 341 Meeting, lines 7-13).   Importantly, no documentation or credible testimony was ever introduced into evidence at trial to establish that issuance of the Savor Ownership Interest was, in fact, conditioned upon Mr. Mitchell's upfront contribution of funds.

[54] *See id*. (lines 14-22).

Correspondingly, by virtue of such testimony, the Plaintiff also successfully brought to light the fact that the Defendants' responses to Questions 18 and 27 within the Defendants' Original SOFA were inaccurate.

During the course of the 341 Meeting, the Trustee advised all creditors who were present, including the Plaintiff, that additional discovery from the Defendants could be pursued by way of a Bankruptcy Rule 2004 examination.  At no point thereafter and prior to the Discharge Objection Deadline, however, did the Plaintiff ever follow up with a request for additional formal discovery. And at no point did the Plaintiff ever take any steps to independently review any of the public filings of Savor 2020 LLC.  Instead, the Plaintiff focused his energy on urging the Trustee to conduct a forensic audit of the Savor Business with the hope that it would further expose the nature of the ownership interest that Mr. Mitchell had or previously held and any income that Mr. Mitchell had received in relation thereto.

Ultimately, despite the numerous follow-up emails that the Trustee received from the Plaintiff, the Trustee determined that no formal action against the Defendants was warranted.  As explained by the Trustee, because the value of the Savor Business was inherently tied to the involvement of Cantrell and/or Mr. Mitchell and neither of them was contractually bound to continue their involvement in the business, the Trustee concluded that the expenditure of estate resources to pursue the recovery of Mr. Mitchell's transferred/relinquished/canceled Savor Ownership Interest, or the value thereof, was unlikely to result in a net material benefit to the estate and creditors.

**H.**   ***Mr. Mitchell Renews His Effort to Obtain a Joint Ownership Interest,
The Defendants Obtain a Chapter 7 Discharge, Mr. Mitchell Begins to
Receive Regular Payments, and the Joint Ownership is Documented***

With the 341 Meeting out of the way, Mr. Mitchell believed that he was in the clear to

restart joint ownership discussions.  Thus, in late January 2021, once Cantrell had also received

word that she was going to be able to maintain the leasehold space as a direct tenant, Mr. Mitchell

stressed to Cantrell that "[i]t [was] time to make it all LLC" and that he would "draw up [his]

contract with amendments and future ear[n]ings and send" it to Barlow, Cantrell's attorney.[55]

Cantrell agreed, noting that she had held off on taking new coaching clients until the ownership

structure was settled.[56]

Separately, the Plaintiff continued to urge the Trustee to take action against the Defendants.

In early February 2021, he also made a number of inquiries about discharge and dischargeability

issues.  Ultimately, however, no litigation was commenced against the Defendants by the Plaintiff,

the Trustee, or any other party in interest by the Discharge Objection Deadline.  Consequently, on

February 19, 2021 (the "**Discharge Date**"), the Court entered an order granting the Defendants a

chapter 7 discharge (the "**Discharge Order**").[57]  Shortly thereafter, on March 1, 2021, the Trustee

informed the Plaintiff that all debts had been discharged as a result of the passage of the Discharge

Objection Deadline without objection.[58]

Unsurprisingly, immediately after issuance of the Discharge Order, Mr. Mitchell and

Cantrell began to work through the details for Mr. Mitchell to regain an ownership interest in the

---

[55] *See* Plaintiff Exh. R, at Bates Mitchell_00206 (1/24/2021 text exchange between Mr. Mitchell and Cantrell).

[56] *See id*., at Bates Mitchell_00206 and Mitchell_00233 (1/24/2021 and 1/31/2021 text exchanges between Mr.
Mitchell and Cantrell).

[57] *See* Bankruptcy Case Docket No. 25; *see also* Joint Stipulations ¶ 11.

[58] Thereafter, on March 26, 2021, the Plaintiff filed suit against the Defendants under Adversary No. 21-04015 to
object to the discharge of the Judgment Debt pursuant to 11 U.S.C. §§ 523(a)(2) and 523(a)(6).  However, the case
was dismissed as untimely.  *See* Joint Stipulations ¶¶ 12-16.

Savor Business.[59]  Additionally, Mr. Mitchell began to receive regular payments from Savor 2020

LLC on account of his involvement in the business (albeit, pending formal documentation of the

ownership interest, they were documented as "Contracted Labor").[60]

## I.    The Defendants' Amended SOFA

On or about March 30, 2021, the Trustee made a request for the Defendants to file an

amended SOFA to correct the disclosures that had proven to be inaccurate during the 341 Meeting.

This would enable the Trustee to file a final report and accounting in the case and seek the closing

of the case.[61]  In compliance with the Trustee's request, on March 30, 2021, the Defendants filed

their amended SOFA (the "**Defendants' Amended SOFA**").[62]   In signing the Defendants'

Amended SOFA, each of the Defendants verified that "I have read the answers on this *Statement*

*of Financial Affairs* and any attachments, and I declare under penalty of perjury that answers are

true and correct."[63]

### (a) Prepetition Income (SOFA Questions 4 and 5)

Pursuant to the Defendants' Amended SOFA and consistent with Mr. Mitchell's testimony

during the 341 Meeting, the Defendants amended their response to SOFA Question 5 to disclose

---

[59] Their joint enthusiasm is best illustrated by the following text exchange on March 4, 2021:

Cantrell: "It finally is truly a dream realized!! Thank u so much for everything.  It took 19 years."

Mr. Mitchell: "You [have] many skills.  Hey.  I am thrilled to be apart (sic) of [it] and thank you for letting me achieve, help and be apart (sic) of it all.  Good days, bad days we got each other's bootys. Lol."

Cantrell: "Yes we do!"

*See* Plaintiff Exh. R, at Bates Mitchell_00323.  A few days later, on March 9, 2021, Cantrell also followed up with the following request in regards to the Savor Business' Facebook page: "Can you please use encouraging words on the Savor page instead of 'hummm.'  When you are highlighted I will tell the world how amazing u r as an (sic) partner and Savor is a dream come true because you are in it."  *See id.*, at Bates Mitchell_00328.

[60] *See, e.g.*, Plaintiff Exh. H, at pp.2-18.

[61] *See* Joint Stipulations ¶ 19.

[62] *See* Plaintiff Exh. B (Defendants' Amended SOFA); *see also* Joint Stipulations ¶ 20.

[63] *See* Plaintiff Exh. B, at p.10.

that Mr. Mitchell had received "odd jobs" income of $1,200 in 2020 (prior to the Petition Date), some or all of which was associated with the Savor Business.[64]

### (b) Prepetition Transfers of Property Outside of the Ordinary Course of Business (SOFA Question 18)

Pursuant to the Defendants' Amended SOFA, the Defendants made no modification to their response to SOFA Question 18.[65] While, in isolation, this had the effect of perpetuating the fraudulent omission from the Defendants' Original SOFA, the Defendants' amended response to SOFA Question 27 (discussed below) had the effect of disclosing the prepetition transfer (through relinquishment/cancelation) of the Savor Ownership Interest that also should have been disclosed in response to Question 18.

### (c) Business Ownership and Connections (SOFA Question 27)

The most notable change made by the Defendants in the Defendants' Amended SOFA was to the response to SOFA Question 27. Pursuant to the amended response, the Defendants specifically identified Savor 2020 LLC as an entity in which Mr. Mitchell had an ownership interest, and in response to the request for a description of the nature of the business, the Defendants added: "Debtor was added as a managing member on July 21, 2020 and then [was] removed on September 30, 2020."[66]

### J.    Mr. Mitchell and Cantrell Finalize the Co-Ownership Documentation

By June 2021, while the formal paperwork had not yet been finalized and signed by the parties, Mr. Mitchell and Cantrell were operating as though they were already partners or co-

---

[64] *See id*, at p.2 (responses to SOFA Questions 4 and 5).

[65] *See id*., at p.7 (response to SOFA Question 18).

[66] *See id*., at p.9 (response to SOFA Question 27).

owners of the Savor Business.[67]   On July 6, 2021, Barlow circulated a draft amended operating
agreement for Savor 2020 LLC, memorializing the co-ownership, to Cantrell and Mr. Mitchell.[68]
Thereafter, on or about July 12, 2021, the amended operating agreement (referred to as the
partnership agreement by Mr. Mitchell) was executed by the parties.[69]

As a result of the executed amended operating agreement, from that point in time forward,
while payments to Mr. Mitchell from Savor 2020 LLC did not immediately change in amount, they
were categorized as "Owner's Pay & Personal Expenses" instead of "Contracted Labor."[70]   The
ownership interest in Savor 2020 LLC acquired by Mr. Mitchell on or about July 12, 2021, is
referred to herein as the "**Post-Petition Savor Ownership Interest**."

### K.    *Plaintiff Files Suit to Pursue Revocation of the Discharge and Urges the United States Trustee to Also Take Action*

On August 25, 2021, after having observed a variety of social media references to Mr.
Mitchell and Cantrell as partners, the Plaintiff initiated this adversary proceeding with the filing
of his initial *pro se* "*Motion to Revoke Discharge of Debt and Reopen the Case Based on Rule 727
A 6.*"[71]   The filing was made within one year of the Discharge Date.[72]   Thereafter, the Plaintiff

---

[67] *See, e.g.*, Plaintiff Exh. H, at p.19 (6/8/2021 record of payment to Mr. Mitchell for "Contracted Labor" that also referenced "Personal Expense credited to draw"); *id.*, at p.22 (6/28/2021 record of payment to Mr. Mitchell for "Contracted Labor" that also included the handwritten reference "Tax Payment"); *see also* Plaintiff Exh. F, at pp.1-2 (correspondence in April and June 2021 with Barlow, Cantrel's attorney, in which reference is made to the needed partnership agreement).   At trial, Mr. Mitchell awkwardly attempted to minimize any pre-July 12, 2021, social media references to Mr. Mitchell and Cantrell as "partners" as just casual talk within the food industry (*i.e.*, that it was common for all workers in the industry to refer to each other as "partners").   The Court did not find Mr. Mitchell's testimony to be credible on this point.   Instead, it was clear to the Court that immediately after the Defendants obtained their bankruptcy discharge, Mr. Mitchell and Cantrell were full speed ahead in their efforts to revert to a co-ownership business model for the Savor Business.

[68] *See* Plaintiff Exh. F, at p.4.

[69] *See id.*, at p.6.

[70] *See* Plaintiff Exh. H, at pp.25-100.

[71] *See* Docket No. 1.

[72] *See* 11 U.S.C. § 727(e) (providing for a one-year deadline to pursue revocation).

engaged counsel, and on October 4, 2021, with the assistance of counsel, Plaintiff filed an *Amended Complaint to Revoke Discharge Pursuant to Section 727(d) of the United States Code.*[73]

In and around this same time frame, the Plaintiff began to regularly communicate with the Office of the United States Trustee (the "**UST's Office**") about his belief that the Defendants had failed to disclose Mr. Mitchell's ownership interest in the Savor Business and the income he had earned from the Savor Business.[74]  As part of those communications, the Plaintiff expressed his view that the Trustee had failed to adequately investigate such matters.  Ultimately, as a result of the Plaintiff's constant demands and communications, the UST's Office opened an investigation into the validity of the Plaintiff's claims.[75]

Among other things, the UST's Office contacted Barlow to coordinate on a Bankruptcy Rule 2004 examination of Cantrell, which would also include the production of relevant documents.[76]  With the agreement of Cantrell, by and through Barlow, on or about December 10, 2021, the UST's Office filed an agreed motion for such examination and production, and an agreed order was thereafter entered on December 13, 2021.[77]

In accordance with the agreed order, Cantrell produced relevant documents and then, on December 14, 2021, the Bankruptcy Rule 2004 examination was conducted.[78]  Following the examination and the completion of an overall investigation into the Plaintiff's claims, the United States Trustee elected to take no independent action against the Defendants.  Of note, at trial,

---

[73] *See* Docket No. 10.

[74] *See* Joint Stipulations ¶ 23.

[75] *See* Joint Stipulations ¶ 24.

[76] *See* Joint Stipulations ¶ 25.

[77] *See* Joint Stipulations ¶ 26.

[78] *See* Joint Stipulations ¶ 27.

neither party called Cantrell as a witness and neither party sought to introduce into evidence any of Cantrell's Bankruptcy Rule 2004 examination testimony.

Separately, on December 13, 2021, in response to the Defendants' filing of a motion to dismiss (which was ultimately denied), the Plaintiff filed the current version of the Complaint.[79] Pursuant to the Complaint, the Plaintiff alleges that Mr. Mitchell was at all relevant times (both prepetition and post-petition) a co-owner of the Savor Business or, alternatively, that Mr. Mitchell transferred his Savor Ownership Interest just prior to the bankruptcy filing after Cantrell's receipt of the Judgment Notice Letter, and that in each case, the Defendants fraudulently concealed the ownership or transfer until after they had obtained their chapter 7 discharge.

## *DISCUSSION*

The federal bankruptcy system is designed to provide the honest but unfortunate debtor with the opportunity to obtain a fresh financial start.[80] As explained by the Supreme Court, "a central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.'"[81]

A key component of making peace with one's creditors is the debtor's complete, truthful and timely disclosure of financial information with respect to the debtor's assets, liabilities, and financial affairs. The failure of a debtor to timely provide such information in a chapter 7 case hinders the ability of the chapter 7 trustee to fully and effectively administer the bankruptcy estate

---

[79] *See* Docket Nos. 22 (Defendants' motion to dismiss) and 26 (current Complaint); *see also* Docket No. 31 (granting the Plaintiff retroactive leave to file the Complaint).

[80] *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2007).

[81] *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

for the benefit of creditors.  Accordingly, some have described the discharge in bankruptcy as a privilege reserved for only those debtors who engage in the bankruptcy process in an honest, forthright and timely manner.[82]  For those debtors who fail to do so, the Bankruptcy Code sets out a number of grounds for the denial of a discharge.[83]

Section 727(a)(2) of the Bankruptcy Code, for example, is one such provision, denying a discharge to a chapter 7 debtor if "the debtor, with intent to hinder … a creditor or an officer of the estate charged with custody of property under [the Bankruptcy Code], has transferred … or concealed, or has permitted to be transferred … or concealed – (A) property of the debtor, within one year before the date of the filing of the [bankruptcy] petition; or (B) property of the estate, after the date of the filing of the [bankruptcy] petition."[84]  Section 727(a)(4)(A) of the Bankruptcy Code is another such provision, denying a discharge to a chapter 7 debtor if "the debtor knowingly and fraudulently, in or in connection with the case … made a false oath or account."[85]

Pursuant to section 727(c) of the Bankruptcy Code, a creditor is granted standing to pursue an objection to discharge under §§ 727(a)(2) and 727(a)(4)(A).[86]  Such objection, however, must be asserted in an adversary proceeding commenced by no later than sixty (60) days after the first date set for the 11 U.S.C. § 341(a) meeting of creditors in a chapter 7 bankruptcy case.[87]  Here, the 60-day deadline was February 14, 2021 (the Discharge Objection Deadline).  While, under certain

---

[82] *See, e.g., In re Tabibian*, 289 F.2d 793, 795 (2nd Cir. 1961) ("a discharge is a privilege granted the honest debtor and not a right accorded to all bankrupts"); *see also United States v. Johnston*, 267 B.R. 717, 722-23 (N.D. Tex. 2001), *aff'd*, 48 Fed. Appx. 917 (5th Cir. 2002).

[83] *See generally* 11 U.S.C. § 727(a)(2)–(a)(7) (grounds for the denial of a discharge in chapter 7).

[84] *See* 11 U.S.C. § 727(a)(2).

[85] *See id*. § 727(a)(4)(A).

[86] *See id*. § 727(c)(1).

[87] *See* Fed. R. Bankr. P. 4004(a)(1) (establishing deadline) and 7001(d) (providing that an objection to discharge constitutes an adversary proceeding governed by the adversary proceeding rules of Part VII of the Federal Rules of Bankruptcy Procedure).

circumstances, the deadline may be extended,[88] it is undisputed that no such extension was either sought or obtained by the Plaintiff or any other party in interest, and it is also undisputed that the Plaintiff failed to timely commence an adversary proceeding against the Defendants to object to the granting of a discharge by the Discharge Objection Deadline.

As a result, the Plaintiff has resorted to the Bankruptcy Code's provisions governing the revocation of a previously issued discharge.  As relevant to this case, pursuant to § 727(d) of the Bankruptcy Code, on request of a creditor (commenced as an adversary proceeding),[89] and after notice and a hearing, "the court shall revoke a discharge granted under [§ 727(a) of the Bankruptcy Code] if – (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge; [or] (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee…."[90]

The party moving for the revocation of a discharge bears the burden of proving all applicable elements under § 727(d) by a preponderance of the evidence.[91]  In light of the fresh start objectives of the Bankruptcy Code, courts have recognized that "the revocation of a discharge under § 727(d) is 'an extraordinary remedy to be sparingly applied.'"[92]  As a result, the grounds

---

[88] *See* Fed. R. Bankr. P. 4004(b).

[89] *See* Fed. R. Bankr. P. 7001(d) (providing that a request to revoke a discharge constitutes an adversary proceeding governed by the adversary proceeding rules of Part VII of the Federal Rules of Bankruptcy Procedure).

[90] *See* 11 U.S.C. § 727(d)(1) and (d)(2).

[91] *See Keeffe v. Natalie*, 337 B.R. 11, 14 (N.D.N.Y. 2006), *aff'd*, 222 Fed. Appx. 97 (2nd Cir. 2007); *Humphreys v. Stedham (In re Stedham)*, 327 B.R. 889, 897 (Bankr. W.D. Tenn. 2005), *aff'd*, 2006 WL 8463575 (W.D. Tenn. 2006); *Neary v. Darby (In re Darby)*, 376 B.R. 534, 539 (Bankr. E.D. Tex. 2007).

[92] *Darby*, 376 B.R. at 539 (quoting *Fokkena v. Peterson (In re Peterson)*, 356 B.R. 468, 475 (Bankr. N.D. Iowa 2006)).

for revocation set out in § 727(d) are to be "construed strictly against any objecting party and liberally in favor of the debtor."[93]

## A.    *Revocation Pursuant to Bankruptcy Code § 727(d)(1)*

A party requesting the revocation of a discharge pursuant to § 727(d)(1) must establish (1) the discharge was obtained through the fraud of the debtor, and (2) that the requesting party did not know of the debtor's fraud until after the discharge had been granted.[94]

### 1.    *Discharge Obtained by Fraud*

The fraudulent conduct most frequently relied upon in the context of § 727(d)(1) is the fraudulent concealment of information that could have served as a basis for denial of the debtor's discharge in the first instance.  The same is true in this case.  The Plaintiff asserts that there was an informational basis for denial of the Defendants' discharge pursuant to § 727(a)(2) and/or § 727(a)(4)(A) of the Bankruptcy Code, but that the Defendants fraudulently concealed the truth about such information in order to obtain their discharge.  Thus, with this in mind, it is first necessary to consider whether information in fact existed which could have served as a basis for denial of the Defendants' discharge under § 727(a)(2) or § 727(a)(4)(A) of the Bankruptcy Code.[95]

*Basis for Denial of a Discharge Under § 727(a)(2).*  In relation to § 727(a)(2) of the Bankruptcy Code, the Plaintiff asserts that the Defendants, with the intent to hinder the Plaintiff's ability to collect on the Judgment and/or to hinder the Trustee's ability to recover and liquidate Mr. Mitchell's ownership interest in the Savor Business for the benefit of creditors, either (a) concealed

---

[93] *Darby*, 376 B.R. at 539 (citing *Lightfoot v. Landry (In re Landry)*, 350 B.R. 51, 56 (Bankr. E.D. La. 2006)); *see also Keeffe*, 337 B.R. at 13.

[94] *See* 11 U.S.C. § 727(d)(1); *see also United States v. Harrison*, 366 B.R. 656, 660 (S.D. Tex. 2007), *aff'd*, 273 Fed. Appx. 315 (5th Cir.), *cert. denied*, 555 U.S. 971 (2008).

[95] *See, e.g., Collins v. Zolnier (In re Zolnier)*, Adversary No. 16-3156, 2024 WL 206357, at *3 (Bankr. S.D. Tex. 2024) (expressly identifying as a third element of a § 727(d)(1) revocation claim that "grounds exist which would have prevented the debtor's discharge had they been known").

or permitted to be concealed Mr. Mitchell's ownership interest in the Savor Business, or (b) transferred or permitted to be transferred (through the prepetition relinquishment/cancellation of) Mr. Mitchell's ownership interest in the Savor Business. The Defendants dispute all aspects of the Plaintiff's allegations. The Court, however, finds merit in certain of them.

First, the Plaintiff asserts that at no point after Mr. Mitchell acquired his ownership interest in the Savor Business in July 2020 (the Savor Partnership Interest and Savor Membership Interest) did Mr. Mitchell ever, in fact, voluntarily or involuntarily lose such ownership interest. Instead, according to the Plaintiff, the Defendants concealed such interest from the Plaintiff and the Trustee by not disclosing it in their Schedules, and by permitting Cantrell to conceal it by and through the Judgement Notice Letter Response, in each case with the intent to hinder the Judgment collection and bankruptcy liquidation objectives of the Plaintiff and Trustee, respectively. At trial, however, the evidence did not bear this out. As noted in the factual background above, while, prior to the Petition Date, Mr. Mitchell did in fact acquire the Savor Partnership Interest and Savor Membership Interest, Mr. Mitchell later transferred such ownership interest(s) in the Savor Business back to Cantrell (through the relinquishment/cancelation of such interests) after the Judgment Notice Letter was received by Cantrell. Thereafter, Mr. Mitchell did not regain an ownership interest in the Savor Business/Savor 2020 LLC until after the Discharge Order had been entered. Therefore, the Plaintiff's assertions and arguments with respect to concealment under § 727(a)(2) are unavailing.

The Plaintiff's alternative argument under § 727(a)(2), however, is that Mr. Mitchell (with the knowing consent of Mrs. Mitchell) transferred his Savor Ownership Interest to Cantrell (through relinquishment) and/or the Defendants permitted Cantrell to effectively transfer Mr. Mitchell's Savor Ownership Interest to herself (through cancelation of the interest), in each case

with the intent to hinder the Plaintiff's ability to collect on the Judgment.  In response, consistent with the Judgment Notice Letter Response, the Defendants initially claimed that Mr. Mitchell had never actually obtained the Savor Ownership Interest because Mr. Mitchell had not yet made (and was incapable of making) a required capital contribution to Savor 2020 LLC.  Plus, according to Mr. Mitchell, the leasehold situation had not yet been resolved by Cantrell.  Thereafter, however, the Defendants modified their story, claiming to have had no knowledge of either the documentation of the Savor Ownership Interest or cancelation of the Savor Ownership Interest. The Court found neither of the Defendants' explanations to be credible.

First, the Defendants' initial story flies in the face of (a) Mr. Mitchell's and Cantrell's execution of the Assumed Name Certificate filed with the County Clerk of Tarrant County, Texas, wherein, under oath, both Mr. Mitchell and Cantrell swore that they were joint owners of the "Savor Culinary Services" business that would be conducted as a limited partnership for the next 10 years, (b) the filing with the Texas Secretary of State of the Certificate of Formation for Savor 2020 LLC, wherein Mr. Mitchell was expressly identified as not only a co-member, but also a co-managing member of Savor 2020 LLC, and (c) the Defendants' Amended SOFA, wherein the Defendants themselves expressly acknowledged, under oath, that Mr. Mitchell did, in fact, have an ownership interest in the Savor Business between July 21, 2020 and September 30, 2020.

Second, with respect to the Defendants' alternative story (*i.e.*, that the Defendants had no knowledge of the issuance and cancelation of the Savor Ownership Interest), the Court simply did not find the Defendants' claim of ignorance to be credible.  With respect to Mr. Mitchell's obtaining of the Savor Ownership Interest, the Defendants' suggestion that they had no knowledge of it flies in the face of Mr. Mitchel's and Cantrell's *joint* execution of the Assumed Name Certificate wherein they *jointly* affirmed under oath that they were co-owners of the Savor Business.

Thereafter, with respect to the cancelation of the Savor Ownership Interest, it is simply inconceivable to believe that, upon receipt of the Judgment Notice Letter, Cantrell simply terminated all communication with Mr. Mitchell and unilaterally took action to *secretly* eliminate his ownership interest and all references to Mr. Mitchell within the Savor Business public filings, all the while Mr. Mitchell continued to provide periodic services to the Savor Business without compensation.

In reality, it is clear that Mr. Mitchell never thought about the impact that the Judgment might have to his co-ownership/partnership in the Savor Business until after the Judgment Notice Letter was received by Cantrell. Once the Judgment Notice Letter was received, thereby putting at risk Mr. Mitchell's financial interest in the Savor Business and creating uncertainty for Cantrell, Mr. Mitchell (with the knowing consent of Mrs. Mitchell, a co-debtor under the Judgment) and Cantrell simply agreed to immediately unwind the co-ownership and develop a story about how it had never actually come into being. They did this with the express purpose of hindering the Plaintiff's efforts to collect on the Judgment through execution against the Savor Ownership Interest.

Accordingly, the Plaintiff has successfully established that, had a timely objection to discharge been made pursuant to § 727(a)(2) of the Bankruptcy Code, the objection would have been sustained, resulting in the denial of a discharge to the Defendants.

*Basis for Denial of a Discharge Under § 727(a)(4)(A).* In relation to § 727(a)(4)(A) of the Bankruptcy Code, the Plaintiff asserts that the Defendants knowingly and fraudulently made a false oath in the Bankruptcy Case by, among other things, failing to disclose Mr. Mitchell's continuing or transferred ownership of the Savor Ownership Interest and Mr. Mitchell's prior managerial position with Savor 2020 LLC in the Defendants' Original SOFA. In response, the

Defendants again claim to have initially been unaware of the issuance and subsequent cancellation of the Savor Ownership Interest and also point to the fact that the disclosures have since been corrected in the Defendants' Amended SOFA.  The Court is not persuaded by either defensive argument.

First, as discussed at length above, the Court quite simply did not find credible any assertions or testimony of ignorance on the part of the Defendants to the fact that Mr. Mitchell was issued the Savor Ownership Interest and thereafter transferred the interest (via relinquishment/cancelation) to Cantrell.  Indeed, the Defendants' pattern of purposefully excluding all references to the Savor Business within the Defendants' Schedules[96] and the Defendants' Original SOFA[97] in the face of the Judgment and the Judgment Notice Letter sent to Cantrell is indicative of the fact that they fully understood what they were attempting to accomplish through the bankruptcy filing – namely, the discharge of the Judgment Debt without any impact to the Savor Business.

Second, with respect to the argument that the inaccurate disclosures from the Defendants' Original SOFA have been corrected by the Defendants' Amended SOFA, it is important to first emphasize two points: *first*, that a false statement or omission in a SOFA constitutes a false oath

---

[96] Among the exclusions was (a) any reference within Schedule A/B to a potential fraudulent transfer cause of action against Cantrell in relation to transfer (relinquishment/cancelation) of the Savor Ownership Interest, and (b) any reference with Schedule I to the anticipated receipt of pospetition "contractor" income from Savor 2020 LLC within 12 months of the filing of the Defendants' Schedules.  *See, e.g.*, Plaintiff Exh. M, at p.14 (Question 33 of Schedule A/B, asking if there are any claims against third parties, whether or not the debtor has filed a lawsuit or made a demand for payment); *id*., at p.55 (Question 13 of Schedule I, asking if the debtors expect an increase in income within the year after filing the schedule).

[97] *See, e.g., id*., at p.69 (Question 18 of SOFA, asking if, within 2 years of the bankruptcy filing, the debtors transferred any property to anyone, other than in the ordinary course of business or financial affairs); *id*, at p.70 (Question 27 of SOFA, asking if, within 4 years before filing for bankruptcy, the debtors owned a business or had any managerial or material ownership interests in any businesses).

that may be sufficient to justify the denial of a discharge under § 727(a)(4)(A);[98] and, *second*, that

the Debtors had "a paramount duty" to carefully consider all questions posed in the SOFA and to

ensure that the responses that they provided in the Defendants' <u>Original</u> SOFA were true, correct,

and complete in all respects.[99]  Next, it is important to consider timing and context.  While mistakes

are possible and the prompt correction of a mistake may negate a finding of fraudulent intent,

where a correction is not made until *after* being challenged during the course of a § 341 meeting,

Bankruptcy Rule 2004 examination, or other deposition, and/or not made until *after* being further

prodded by the chapter 7 trustee to make such correction, such circumstantial evidence points more

towards purposeful deception than a mistake, particularly where the inaccuracy is part of a pattern

of inaccuracies having the effect of concealing a specific type of information.[100]  That is exactly

the case here.

Here, the Defendants knowingly and purposefully omitted any reference to the Savor

Ownership Interest, the prepetition transfer of the Savor Ownership Interest, and Mr. Mitchell's

managerial connection to Savor 2020 LLC in their responses to Questions 18 and 27 of the

Defendants' Original SOFA with the intent to shield the Savor Business from any possible creditor

or trustee collection activity in connection with the Bankruptcy Case.  The Plaintiff, however,

successfully brought to light Mr. Mitchell's prepetition acquisition of the Savor Ownership Interest

and the prepetition transfer (relinquishment/cancellation) of such interest during the course of the

---

[98] *See Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992); *see also Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009).

[99] *See Hughes v. Wells (In re Wells)*, 426 B.R. 579, 599 (Bankr. N.D. Tex. 2006); *Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 593-94 (Bankr. N.D. Tex. 1991).

[100] *See, e.g., Sholdra v. Chilmark Fin. LLP (In re Sholdra)*, 249 F.3d 380, 382-83 (5th Cir.), *cert. denied*, 534 U.S. 1042 (2001); *Lambert v. Varga (In re Varga)*, Adversary No. 21-04083, 2025 WL 3273589, at *17-*18 (Bankr. N.D. Tex. Nov. 22, 2025).

§ 341 Meeting.  Thereafter, the Defendants took no action to correct the false information until after being prodded to do so by the Trustee.

Based upon the foregoing, the Court finds that the Plaintiff has also successfully established that, had a timely objection to discharge been made pursuant to § 727(a)(4)(A) of the Bankruptcy Code, the objection would have been sustained, resulting in the denial of a discharge to the Defendants.

_Fraudulent Concealment of Such Information to Obtain Discharge_.  Thus, taking into account the above grounds for denial of a discharge, for § 727(d)(1) purposes, the Plaintiff was required to establish that the Defendants fraudulently concealed information with respect to such grounds in order to obtain their discharge.  The Court finds that the Plaintiff successfully established the same.

First, with respect to the prepetition transfer of the Savor Ownership Interest, the Defendants took at least two different affirmative steps to conceal the truth about the transfer until after the Discharge Order had been issued.  First, the Defendants filed the Defendants' Original SOFA, under oath, in which the Defendants knowingly and fraudulently omitted from their response to SOFA Question 18 any reference to the transfer.  Second, in response to questioning from the Plaintiff during the § 341 Meeting, Mr. Mitchell confirmed the false factual narrative laid out in the Judgement Notice Letter (_i.e._, that no ownership interest had been issued due to the failure to make an initial capital contribution) and then doubled down with additional testimony concerning the impact of the leasehold situation.  At no point prior to receiving their discharge did the Defendants clearly and unequivocally correct the record to make it clear that Mr. Mitchell obtained the Savor Ownership Interest and then transferred it back to Cantrell (through relinquishment/cancelation) in the face of the Judgment Notice Letter.

Second, with respect to the false oath taken in executing the Defendant's Original SOFA, here again the Defendants took no steps prior to obtaining their discharge to correct the false information set out therein pursuant to an amended SOFA.  Only after the Discharge Order had been entered and the Trustee prodded the Defendants to make the corrections did the Defendants filed the Defendants' Amended SOFA.  Indeed, at a minimum, the corrective action could have been taken once the UST's Office commenced its independent investigation and sought the Bankruptcy Rule 2004 examination of Cantrell so as to eliminate the expenditure of time and resources by the UST's Office.  The fact that no action was taken is indicative of a desire on the part of the Defendants to attempt to continue to conceal, or at least obfuscate, the true prepetition state of affairs in relation to the Savor Ownership Interest.

For these reasons, the Plaintiff has satisfied the first element of his § 727(d)(1) claim.

### 2.    *Plaintiff's Knowledge*

Turning to the second element of the § 727(d)(1) claim, the Plaintiff must establish that he did <u>not</u> know of the Defendants' fraud until after the discharge was granted.  "A party made aware of the fraud prior to discharge may not seek revocation."[101]

In this case, the Plaintiff claims that he did not learn about Mr. Mitchell's ownership of the Savor Ownership Interest, with certainty, until after the Discharge Order had been entered, renewed statements of co-ownership were posted on the Savor Business' Facebook page, and public records with respect to the Savor Business were then reviewed.  The Plaintiff asserts that the Defendants fraudulently concealed the true state of affairs prior to entry of the Discharge Order through false informational disclosures and testimony.  In response, the Defendants argue that the Plaintiff obtained more than sufficient information prior to entry of the Discharge Order to have

---

[101] *Stedham*, 327 B.R. at 897.

both put him on inquiry notice and enabled him to make a timely objection to discharge, thereby negating the second element of the § 727(d)(1) claim. Reluctantly, the Court agrees with the Defendants.

Importantly, a party may not ignore information suggestive of fraud if the fraud is reasonably capable of discovery based upon known information. In other words, "the party seeking revocation of the discharge must <u>not</u> have known sufficient facts regarding the Debtor's actions and/or omissions 'such that [the party was] put on notice of a possible fraud.'"[102] A majority of the courts hold that "knowledge in a § 727(d)(1) revocation action occurs when the party seeking revocation first becomes aware of facts such that he is put on notice of a possible fraud."[103]

Here, even prior to the Petition Date, the Plaintiff obtained notice of sufficient facts to call into question the true state of affairs. First, whether based upon social media postings or otherwise, the Plaintiff learned of Mr. Mitchell's purported co-ownership of the Savor Business. Such information led to the issuance of the Judgment Notice Letter by Plaintiff's counsel to Cantrell. When, in response, Cantrell (through her counsel) provided the Judgment Notice Letter Response, wherein it was confirmed that there was, in fact, a *plan* for Mr. Mitchell to be a co-owner of the Savor Business, but that Mr. Mitchell had purportedly failed to make the capital contribution required to obtain the ownership interest, the Plaintiff could and should have further investigated the matter by, among other things, (a) reviewing publicly available information with respect to the Savor Business and Savor 2020 LLC, and (b) requested additional information with respect to the

---

[102] *Stedham*, 327 B.R. at 898 (emphasis added) (quoting *Buckeye Retirement Co. v. Heil (In re Heil)*, 289 B.R. 897, 903 (Bankr. E.D. Tenn. 2003) (citing *Mid-Tech Consulting, Inc. v. Swendra (In re Swendra)*, 938 F.3d 885, 888 (8th Cir. 1991))).

[103] *Landry*, 350 B.R. at 56-57 (listing courts aligned with such view in footnote 15).

purported capital contribution not made by Mr. Mitchell.  Had such investigation been undertaken, at a minimum, the Plaintiff could have discovered the Assumed Name Certificate (signed under oath by both Mr. Mitchell and Cantrell) and the Savor 2020 LLC Certificate of Formation, thereby calling into question any story about an unpaid capital contribution and the non-existence of the co-ownership.

Then, after the Bankruptcy Case had been filed and the Defendants filed the Defendants' Original SOFA, wherein they failed to disclose any connection at all to the Savor Business, the Plaintiff could have taken the testimony that he elicited from Mr. Mitchell at the § 341 Meeting – whereby Mr. Mitchell admitted that he had, in fact, been listed as a managing member of Savor 2020 LLC, but was thereafter removed (thereby calling into question the integrity of the Defendants' Original SOFA, particularly in the face of the Assumed Name Certificate) – and initiated a timely objection to the Defendants discharge under § 727(a)(2) and/or § 727(a)(4)(A). Indeed, at trial, when questioned about the new disclosures set out in the Defendants' Amended SOFA filed after the Discharge Order had already been entered, the Plaintiff acknowledged that he already knew about the new information disclosed in the amended response to SOFA Question 27 because of the Judgment Notice Letter Response.

Here, the simple truth of the matter is that the Plaintiff was attempting to navigate the bankruptcy discharge process in a *pro se* capacity and missed a critical deadline – the Discharge Objection Deadline.  While the Plaintiff thereafter retained counsel and, with the assistance of counsel, lodged a good faith complaint to revoke the Defendants' discharge, ultimately the Plaintiff cannot prevail on his § 727(d)(1) claim because of the failure to establish by a preponderance of the evidence that he did not know of the Defendants' fraud until after the Defendants' discharge had been granted.

**B.**     *Revocation Pursuant to Bankruptcy Code § 727(d)(2)*

A party requesting the revocation of a discharge pursuant to § 727(d)(2) of the Bankruptcy Code must establish (1) the debtor acquired property constituting property of the estate, or became entitled to acquire property that would constitute property of the estate, (2) the debtor knew that the property at issue constituted or would constitute property of the estate, and (3) the debtor fraudulently failed to report the acquisition of or entitlement to such property, or failed to deliver or surrender such property, to the trustee.[104]

In relation to the first element of § 727(d)(2), the element only applies to property acquired, or to a right to acquire property, by a debtor after the bankruptcy petition has been filed.[105]  With that in mind, the Plaintiff appears to assert that the Post-Petition Savor Ownership Interest constitutes property of the Defendants' bankruptcy estate subject to the Trustee's control and liquidation for the benefit of creditors.  The Defendants disagree, asserting that it does not constitute property of the estate.  The Court agrees with the Defendants.

Section 541 of the Bankruptcy Code dictates what property constitutes property of the bankruptcy estate.  Subject to certain inapplicable exceptions and additions, property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."[106]  While under certain other chapters of the Bankruptcy Code, property acquired by a debtor after the commencement of the bankruptcy case may also become property of the

---

[104] *See* 11 U.S.C. § 727(d)(2); *see also United States v. Harrison*, 366 B.R. 656, 660 (S.D. Tex. 2007), *aff'd*, 273 Fed. Appx. 315 (5th Cir.), *cert. denied*, 555 U.S. 971 (2008).

[105] *See Citicorp Real Estate, Inc. v. DaMaia (In re DaMaia)*, 217 F.3d 838 (4th Cir. 2000); *Werner v. Puente (In re Puente)*, 49 B.R. 966, 968 (Bankr. W.D.N.Y. 1985).

[106] *See* 11 U.S.C. § 541(a)(1).

bankruptcy estate,[107] in a chapter 7 case, property acquired by a debtor after the commencement of the case generally does not become property of the estate.[108]

With the foregoing in mind, because the Post-Petition Savor Ownership Interest was not acquired by Mr. Mitchell until well after the Petition Date, it does not constitute property of the Defendants' bankruptcy estate.   Moreover, no evidence was introduced of the existence of a prepetition agreement under which Cantrell was contractually obligated to re-offer the ownership interest to Mr. Mitchell on a post-petition basis; Cantrell could have simply refused to re-entertain the idea of joint ownership.  Thus, because the bankruptcy estate did not include any contractual right to secure the Post-Petition Savor Ownership Interest, the Plaintiff has failed to carry his burden of proof on the first element of his § 727(d)(2) claim.

As a result, it is unnecessary to consider the remaining elements of the Plaintiff's § 727(d)(2) claim and judgment will be entered in favor of the Defendants on such claim.

### CONCLUSION

For all of the foregoing reasons, the Plaintiff's request for revocation of the Defendants' chapter 7 discharge will be denied.  The Court will separately enter a final judgment in accordance herewith.

### # # #   END OF MEMORANDUM OPINION   # # #

---

[107] *See, e.g.*, 11 U.S.C. §§ 1115(a) and 1306(a).

[108] *See Harris v. Viegelahn*, 575 U.S. 510, 513-14 (2015); *Hawk v. Engelhart (In re Hawk)*, 871 F.3d 287, 292 (5th Cir. 2017).